Riley *v.* City of Brooklyn.

———•●•———

RILEY *vs.* THE CITY OF BROOKLYN.

The defendant having advertised for proposals for grading and paving an avenue, and invited bids for the work according to the profile map on file in the office of the street commissioner, the plaintiff, after having examined such profile, made an estimate of the work and materials attached thereto, made a proposal, which was accepted, and a contract executed, under which the work was done and the materials furnished by him. The referee found that as an inducement to the plaintiff to enter into the contract, the defendant represented to, and induced the plaintiff to believe, and he did believe, that it would require but 40,000 yards of filling to fulfill said contract; that the profile map and estimate attached thereto were incorrect and untrue in fact, and misled the plaintiff in this, that they represented that it would require but 40.000 yards of filling, when in fact it did take 70,000 yards of earth, in filling, to complete said contract. These findings being fully sustained by the testimony; *Held* that for the extra work performed by the plaintiff in filling, and in repaving, and resetting the curb and gutter, which was necessary to the proper grading and paving of the avenue, but not included in the contract price, and which was required by the defendant to be done, the plaintiff was entitled to recover of the defendant.

In such a case, where nothing is contained in the advertisement or contract disclaiming any liability for the inacuracy of the approximate quantity in the estimate, bidders whose bids are based upon the map, profile and estimate, and who rely entirely thereupon, have the right to hold the statements therein made to be substantially true in fact, and as intended for their guidance, in the absence of any notice to the contrary.

Riley *v.* City of Brooklyn.

APPEAL by the defendant from a judgment entered on the report of a referee.

The plaintiff alleged, in his complaint, that the defendant was a municipal corporation, created and existing under and by virtue of certain acts of the legislature of the State of New York; and by virtue of said acts was authorized and empowered to lay out, grade and pave streets within the corporate limits of the said city of Brooklyn. That the defendant, heretofore, by resolution, determined to cause Ninth avenue, from Twelfth street to the Greenwood Cemetery, within said corporate limits, to be graded and paved; and awarded the contract for said work to the plaintiff. That upon the distinct and especial state ment and representation of the defendant, that said grading and filling would require only forty thousand cubic yards of filling, the plaintiff, relying wholly upon the truth of said representation and statement, on or about the 13th day of April, 1865, was induced to enter into an agreement with the defendant, in writing, whereby the plaintiff undertook and agreed to and with the defendant, that he would grade and pave said Ninth avenue, from Twelfth street to the Greenwood Cemetery, agreeably to the profile of said avenue on file in the office of the street commissioner, at and for the sum or price of four dollars and seventy-five cents per running foot. That at the time of making the plaintiff's estimate for said work, and at the time of entering into the contract therefor, there was attached to said profile in said street commissioner's office, a statement in writing, of which the following is a copy, viz:

"40,000 cubic yards of filling.
7,000 " " " cutting.
1,974 curb and gutter through the centre.
12 corners.
3,000 superficial feet of bridges.
9,000 yards of paving."

Riley *v.* City of Brooklyn.

That said statement of the defendant, so exhibited to the plaintiff, was solely relied upon by the plaintiff, as a true and correct estimate of the work and materials required for said grading and paving; whereas the plaintiff averred and charged the truth to be, that it, in fact, required about twenty-five thousand yards of earth over said estimate to fill up and grade said avenue, and that the same was reasonably worth the sum of seventy-five cents per yard, amounting to eighteen thousand seven hundred and fifty dollars. And the plaintiff averred that he had done, performed and completed said work according to the letter of said contract, including said work not estimated or included in said contract price of $4.75 per running foot; and the same being required in order to grade said street, the defendant impliedly promised to pay the plaintiff therefor what the same should be reasonably worth.

And for a further cause of action, the complaint further shows that during the progress of said work, by reason of the soft and wet condition of the ground upon which said filling was placed, the same settled and sunk down frequently, in an unusual manner and extraordinary extent, by reason of which the plaintiff was obliged three times to repave said avenue and to reset the said curb and gutter in said avenue; and he averred that said repaving and resetting were reasonably worth the sum of seven thousand two hundred and fifty dollars; and the plaintiff averred that the same was extra work—necessary to the proper grading and paving said avenue—but not included in the price named, to wit, $4.75 per running foot. And the defendant impliedly contracted to pay the plaintiff therefor what the same should be reasonably worth, to wit, $7250.

The plaintiff further alleged that he had presented his said claims to the defendant for payment, and the defendant had refused to pay the same. Wherefore he demanded judgment against the defendant for said sums, amounting

together to twenty-six thousand dollars, with interest thereon since May 1, 1868, besides costs.

The answer of the defendant admitted that it was a municipal corporation, as stated in the complaint; and that heretofore, it, by resolution, determined to cause Ninth avenue to be graded and paved from Twelfth street to Greenwood Cemetery, and that the contract to do the said work and furnish the materials therefor, was awarded to the plaintiff, at the price or rate of $4.75 per running foot, as would more fully and at large appear by the contract now on file in the office of the street commissioner of the defendant, reference to which was thereby made.

The defendant alleged that the said work was to be done agreeably to the profile of said avenue, on file in the office of the street commissioner; but denied that the said profile formed any part of said contract, except for the purpose of determining the grade or level to which the said work was to be done,

The defendant further admitted and averred that there was on file in said street commissioner's office, a paper unsigned, which purported to be an " estimate of about the amount of work required to be done, and materials required to finish the grading and paving of Ninth avenue, from Twelfth street to Greenwood Cemetery," and averred that the further words and figures thereof were correctly stated in the complaint; but expressly denied that said estimate formed any part of said contract, and denied that any reference thereto was had therein, or in the making of said contract; and further denied that said estimate formed any part of said profile on file as aforesaid.

The defendant averred that it was well known to the plaintiff, and that it was so expressed in the said profile, that a portion of said avenue was soft and swampy, and liable to sink when graded and paved.

Every other allegation in the complaint was denied.

The action was referred to G. T. Jenks, Esq., who found the following facts:

*First.* That the defendant is a municipal corporation, as alleged in the complaint. That the defendant duly made and entered into a contract with the plaintiff, to grade and pave Ninth avenue in said city of Brooklyn, from Twelfth street to Greenwood Cemetery, for the price or sum of $4.75 per running foot, through the centre of said avenue. That as an inducement to the plaintiff to enter into said contract, and as the basis thereof, the defendant repre-sented to said plaintiff and induced him to believe, and he did believe, that it would require but forty thousand yards of filling to fulfill said contract; that such representation was in writing and attached and affixed to the profile map on file in the office of the street commissioner of the defendant, and made a part thereof. That the contract was based upon said profile and estimate.

*Second.* That said profile map, on which the plaintiff based his estimate for said contract and his bid for the work, contained a base line showing and representing the hard pan or bottom line of said filling and the grade line required to be established, and that the estimate annexed and affixed thereto was based upon the correctness of said map, and was placed there by the defendant. That the plaintiff completed and finished said contract on his part, and fully graded and paved said avenue between Twelfth street and Greenwood Cemetery, agreeably to the said profile map, and to said contract. That immediately after said work was completed, the plaintiff notified the inspector of the defendant to inspect said work, which said inspector promised to do on the following morning; that said inspector failed to inspect said work for two or three days. That said profile map, and estimate annexed and attached thereto, were incorrect and untrue in fact, and misled the plaintiff in this, that they represented that it would require but forty thousand yards of filling to fulfill

said contract, when in fact it did take seventy thousand yards of earth in filling, to complete said contract. That said filling was fairly and reasonably worth the sum of seventy-five cents per yard.

*Third.* That during the progress of said work, by reason of the soft and swampy condition of the ground in said avenue, upon which said filling was placed, the same settled and sunk down frequently much below the base line as shown on said profile, in an unusual manner, and to an extraordinary extent, by reason of which the plaintiff was obliged three times to repair said avenue, and to reset the said curb and gutter in said avenue. That the work of repaving and resetting were reasonably and fairly worth the sum of six thousand six hundred dollars. That the work hereinbefore referred to, to wit, the thirty thousand yards of filling and the repaving and resetting of curb and gutter, was extra work necessary to the proper grading and paving of said avenue, but not included in the contract price of $4.75 per running foot, and that the same was required by the defendant to be done.

*Fourth.* That the plaintiff, before the commencement of this action, demanded payment of the aforesaid claims from the defendant, which was refused.

As a conclusion of law upon the pleadings and the foregoing facts, the referee found and decided that the plaintiff was entitled to judgment against the defendant for the sum of $29,100, together with interest thereon from January 9, 1869, amounting to $1867.25; amounting in all at the date of the report, to the sum of $30,967.25, with costs of this action, which he accordingly ordered.

*Wm. C. Dewitt,* for the appellant.

*John H. Bergen,* for the respondent.

I. The profile map and estimate affixed thereto constituted a material representation, and the plaintiff was

entitled to rely thereon, and he did rely thereon, and it was the sole basis of his bid for the work.

II. That representation was false in fact, and misled the plaintiff in estimating for said work, and in making the contract.

III. The work for which this judgment is found was all extra work, necessary to the proper grading and paving of said avenue, and not included in the contract price of $4.75 per foot, and the same was required by the defendant to be done. The defendant was clearly liable for the same, and the judgment should be affirmed, with costs.

*By the Court,* TAPPEN, J.  The plaintiff brings this action to recover $26,000 and interest from the defendants, and bases his claim on the following facts : In April, 1865, the defendants, pursuant to their charter, advertised for proposals for the grading and paving of Ninth avenue from Twelfth street to Greenwood.  Bids were invited for the work, according to the profile map, on file in the office of the street commissioners.  Attached to the map was a paper, which read as follows :

"Estimate of about the amount of work to be done and materials required to finish the grading and paving of Ninth avenue, from Twelfth street to Greenwood Cemetery.

> 40,000 cubic yards of filling.
> 7,000   "       "    cutting.
> 1,974 curb and gutter through the centre.
>    12 corners.
> 3,000 superficial feet of bridge.
> 9,000 yards of paving."

The profile map contained a base line, showing and representing the hard pan or bottom line of filling, and the grade line.  This base line was an important fact, because of the soft and swampy condition of the ground over or upon which the avenue was required to be built or filled

out. The offers invited and tendered were based upon the map in question and the estimate attached thereto of the actual or approximate quantity of work to be done, and this map and the estimate were prepared on behalf of the defendants, and exhibited to persons desirous of contracting for the work.

The plaintiff being the lowest bidder, the contract was awarded to him, and was thereupon duly executed with sureties, and the plaintiff proceeded to do the work. By the terms of the contract the plaintiff was to furnish all the materials and do all the work, agreeable to the profile of said avenue on file, &c. The grading, paving, and curb and gutter work were completed according to the profile and contract, and two or three days thereafter, and before the inspection of the work by the defendant's inspector, the new street sank about eleven feet. The plaintiff then removed the paving, gutter and curb stone, and refilled and repaired the street, and again set the curb and gutter. It appears that some of the work was done three times over. The quantity of filling done by the plaintiff, in all, was about seventy thousand yards, instead of the forty thousand, as estimated by the defendants, and the resetting of curb and gutter, and repaving of street involved a very large additional expense to the plaintiff.

If the defendants, in offering the work for contract, had accurately ascertained the bottom of the swamp land, it would then have appeared that nearly double the quantity of filling which they stated, was or would be required to grade the street to the profile line. So wide a departure from the fact is something more than an error or mistake; it is a misrepresentation, and where nothing is contained in the advertisement or contract, disclaiming any liability for the inaccuracy of the approximate quantity in the estimate, bidders whose bids are based upon the map, profile and estimate, and who rely entirely thereupon, have the right to hold the statements therein made to be substantially

true in fact, and as intended for their guidance, where there is no notice to the contrary. The contract is to be interpreted in the sense in which the language thereof was used by the parties at the time of the making of the contract, and with reference to the state of things which then existed. (*Liddle* v. *Market Fire Insurance Co.*, 4 *Bosw.* 179.)

The referee's findings, "that as an inducement to the plaintiff to enter into the contract, the defendants represented to and induced the plaintiff to believe, and he did believe, that it would require but forty thousand yards of filling to fulfill said contract; and further, that the profile map and estimate attached thereto were incorrect and untrue in fact, and misled the plaintiff in this, that they represented that it would require but forty thousand yards of filling, when in fact it did take seventy thousand yards of earth in filling to complete said contract.

These findings are fully sustained by the testimony. Indeed there is no conflict of facts, and there appearing to be no error or exceptions upon the trial, the judgment should be affirmed, with costs.

[KINGS GENERAL TERM, February 14, 1870. *J. F. Barnard*, *Gilbert* and *Tappen*, Justices.]